## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE ADOBE INC. AND ADOBE SYSTEMS SOFTWARE IRELAND LIMITED'S *EX PARTE* APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO OBTAIN DISCOVERY FOR USE IN A FOREIGN PROCEEDING | C.A. NO.: |

## MEMORANDUM OF LAW IN SUPPORT OF ADOBE INC. AND ADOBE SYSTEMS SOFTWARE IRELAND LIMITED'S *EX PARTE* APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO OBTAIN DISCOVERY FOR USE IN A FOREIGN PROCEEDING

# TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ........................................................................1

II.     FACTUAL BACKGROUND ...........................................................................2

   A.   THE PARTIES........................................................................................2

   B.   THE DUTCH PROCEEDING...................................................................3

   C.   ADMISSIBILITY CRITERIA UNDER THE GDPR AND DUTCH LAW..........4

   D.   THE REQUESTED DISCOVERY WILL DEMONSTRATE THAT SDBN
        DOES NOT MEET THE ADMISSIBILITY CRITERIA OF THE GDPR OR
        THE WAMCA ......................................................................................5

        1.   Adobe Believes a Profit Motive May be Driving the Litigation. .....................5

        2.   The Claim Must be Dismissed if The Class's Interests Are Not Being
             Sufficiently Safeguarded. ..................................................................7

        3.   SDBN May Lack Necessary Control over the Dutch Proceeding...................8

III.    REQUESTED DISCOVERY ..............................................................9

IV.     ARGUMENT ..................................................................................10

   A.   ADOBE'S APPLICATION MEETS THE SECTION 1782 REQUIREMENTS .11

        1.   Adobe Is an "Interested Person." ...................................................11

        2.   The Evidence Is For Use in a Foreign Proceeding. ...........................11

        3.   Marsh is Located in Delaware.........................................................12

   B.   THE *INTEL* DISCRETIONARY FACTORS STRONGLY FAVOR GRANTING
        DISCOVERY .......................................................................................13

        1.   The Evidence is Located in the United States, and Marsh is not a Named
             Party in the Foreign Proceeding. ...................................................13

        2.   The Dutch Court Is Not Hostile to This Application. ...................14

        3.   The Application Has Not Been Filed to Circumvent Any Law or Rule ........15

        4.   The Discovery Requests Are Not Unduly Intrusive or Burdensome. ...........16

V.      CONCLUSION ..................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Micro Devices, Inc. v. Intel Corp.*,
 292 F.3d 664 (9th Cir. 2002) ................................................. 12

*In re Application of 000 Promneftstroy for an Ord. to Conduct Discovery for use
 in a Foreign Proceeding*,
 134 F. Supp. 3d 789 (S.D.N.Y. 2015) ................................................. 12, 15

*In re Bayer AG*,
 146 F.3d 188 (3d Cir. 1998) ................................................. 10, 12

*In re Biomet Orthopaedics Switzerland GmBh*,
 742 F. App'x 690 (3d Cir. 2018) ................................................. 10

*Euromepa S.A. v. R. Esmerian, Inc.*,
 51 F.3d 1095 (2d Cir. 1995) ................................................. 14

*In the Matter of HES (Caribbean) Int'l Holdings, S.R.L.*,
 2020 WL 728892 (D.N.J. Feb. 13, 2020) ................................................. 12

*Intel Corp. v. Advanced Micro Devices, Inc.*,
 542 U.S. 241 (2004) ................................................. *passim*

*John Deere Ltd. v. Sperry Corp.*,
 754 F.2d 132 (3d Cir. 1985) ................................................. 11

*In re Jud. Assistance Pursuant to U.S.C. Sec. 1782 ex rel. Macquarie Bank Ltd.*,
 2014 WL 7706908 (D. Nev. June 4, 2014) ................................................. 15

*Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*,
 895 F.3d 238 (2d Cir. 2018) ................................................. 15

*In re Malev Hungarian Airlines*,
 964 F.2d 97 (2d Cir. 1992) ................................................. 11

*In re Martin & Harris Priv. Ltd.*,
 2021 WL 2434069 (D.N.J. June 14, 2021) ................................................. 13

*Nikon Corp. v. GlobalFoundries U.S., Inc.*,
 706 F. App'x 350 (9th Cir. 2017) ................................................. 14

*In re Procter & Gamble Co.*,
 334 F. Supp. 2d 1112 (E.D. Wis. 2004) ................................................. 14

*Weber v. Finker*,
    554 F.3d 1379 (11th Cir. 2009) .................................................................................12

**Statutes**

28 U.S.C. § 1782 .................................................................................... *passim*

General Data Protection Regulation ("GDPR") .................................................. *passim*

Mass Damage in Collective Action Act ("WAMCA")........................................... *passim*

**Other Authorities**

*About Longford Capital*, Longford Capital,
    https://www.longfordcapital.com/longford-capital (last visited Apr. 26, 2024) ......................3

*Appeal Submission*,
    https://www.rechtspraak.nl/SiteCollectionDocuments/GHAMS-dagvaarding-
    collectieve-vordering-Oracle-Salesforce.pdf (last visited July 8, 2024) ...................................8

*Longford Capital Raises $682 Million for New Investment Fund*, Longford
    Capital, https://www.longfordcapital.com/media/longford-capital-raises-682-
    million-for-new-investment-fund (Sept. 22, 2021) (last visited Apr. 26, 2024)........................3

*New Investment Fund*, Longford Capital,
    https://www.longfordcapital.com/media/longford-capital-raises-682-million-
    for-new-investment-fund (Sept. 22, 2021) (last visited Apr. 26, 2024) ....................................3

RLF1 31262329v.1

Applicants Adobe Inc. and Adobe Systems Software Ireland Limited ("Adobe Ireland," collectively "Adobe"), by and through their undersigned attorneys, respectfully seek an Order pursuant to 28 U.S.C. § 1782 to obtain discovery from Marsh Funding LLC ("Marsh") for use in a foreign litigation proceeding (the "Dutch Proceeding").

## I.     PRELIMINARY STATEMENT

On December 19, 2023, Stichting Data Bescherming Nederland ("SDBN") filed the Dutch-equivalent of a class action against Adobe in Rotterdam District Court in the Netherlands, alleging violations of the General Data Protection Regulation ("GDPR") and the Dutch Telecommunications Act. SDBN, which identifies itself as a nonprofit focused on data privacy litigation, claims to represent all natural persons who are or were resident in the Netherlands between May 25, 2018 to the present who purportedly were affected by Adobe's alleged violation of their privacy rights.

SDBN's claims were brought under a Dutch collective action law, the Resolution of Mass Damage in Collective Action Act ("WAMCA"), as well as under Article 80 of the GDPR, which allows parties to bring collective actions for alleged GDPR violations. Through WAMCA and the GDPR, SDBN contends it represents seven million individuals, who were all allegedly harmed by Adobe between 2018 to present—a staggering number of claimants (especially as compared against the population of the Netherlands, which in 2018 stood at just over 17 million).

An oral hearing is currently scheduled for December 17, 2024. Prior to this hearing, Adobe is required to file its statement of defense, where Adobe will argue why the Rotterdam court does not have jurisdiction over SDBN's claims and that SDBN's action should be dismissed because it does not meet the statutory requirements for admissibility of a collective action under the GDPR and the WAMCA. The deadline for Adobe's Statement of Defense is September 25, 2024.

Through this Application, Adobe seeks production of three narrow categories of documents for use in the Dutch Proceeding. As demonstrated below, Adobe's Application should be granted.

Adobe satisfies all three statutory requirements for Section 1782 discovery. **First,** Adobe is a party to and therefore an interested person in the Dutch Proceeding. **Second,** Marsh "is found" in this District because it is incorporated in Delaware and its headquarters are in Dover, Delaware. **Third,** the discovery Adobe seeks regarding SDBN's standing to bring a claim is crucial to the resolution of issues in the foreign proceeding. The statutory requirements of Section 1782 are accordingly satisfied.

Adobe also satisfies the discretionary factors set out by the Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264–65 (2004). **First**, Marsh is not a party to the foreign proceeding, and the discovery that Adobe seeks is located in the United States. **Second**, Dutch courts have long been receptive to discovery under Section 1782. **Third**, Adobe does not seek to circumvent any policy of the Dutch courts in requesting this discovery. **Fourth**, the request for three categories of documents and related testimony is not intrusive or unduly burdensome.

Based on the foregoing, this Court should grant Adobe's application.

## II.  FACTUAL BACKGROUND

### A.  The Parties

Founded in 1982, Adobe Inc. is an American multinational software company that provides products focused on creativity, multimedia, and digital marketing. Adobe Inc. is a Delaware corporation with its principal place of business in San Jose, California. Adobe Ireland is an affiliate of Adobe Inc. based in Dublin.

Marsh is incorporated in Delaware and is part of the Longford Capital Management, LP, ("Longford Capital") group of companies. *See* Declaration of M.G.A. Egeler dated July 23, 2024

("Egeler Decl.") Decl. ¶ 7; Declaration of Noelle Williams dated July 23, 2024 ("Williams Declaration"), Ex. 2, Delaware Company Search.[1] Longford Capital is one of the world's largest and most experienced external litigation funders. It operates by providing "capital to (i) companies to pay attorneys' fees and expenses incurred in litigation and (ii) invest in portfolios of cases managed by leading law firms."[2] Longford Capital currently has more than $1.2 billion in assets under management, and its stakeholders include institutional investors and high-net-worth individuals who seek to increase their wealth by investing in the outcomes of commercial litigations.[3]

### B.    The Dutch Proceeding

Adobe Inc. was served with a writ of summons on December 19, 2023, and Adobe Ireland was served on December 14, 2023. Plaintiff SDBN is a foundation established in 2021, with its registered office in Oud-Beijerland, the Netherlands. It claims to be a collective advocacy organization, and its stated aim is to represent the interests of persons who have suffered due to a privacy violation. *See* Egeler Decl. ¶ 5. SDBN claims that Adobe violated several articles of, *inter alia*, the GDPR by allegedly collecting personal information from Dutch internet users via Adobe cookies without the consent of those users and aggregating the collected data to create profiles of those users to then sell to third parties. *See* Egeler Decl. ¶ 6.

---

[1] Citations to "Williams Ex. [ ]" refer to exhibits to the Declaration of Noelle Williams dated July 23, 2024. Citations to "Egeler Ex. [ ]" refer to exhibits to the Declaration of M.G.A. Egeler dated July 23, 2024.

[2] *About Longford Capital*, Longford Capital, https://www.longfordcapital.com/longford-capital (last visited Apr. 26, 2024).

[3] *Longford Capital Raises $682 Million for New Investment Fund*, Longford Capital, https://www.longfordcapital.com/media/longford-capital-raises-682-million-for-new-investment-fund (Sept. 22, 2021) (last visited Apr. 26, 2024).

3

SDBN has filed a collective action under the WAMCA, a Dutch law that permits parties to file a collective action for monetary damages, as well as under Article 80 of the GDPR, which allows parties to bring collective actions. *Id.* SDBN claims to represent all natural persons in the Netherlands who were affected by Adobe's allegedly unlawful actions, which it estimates to be up to seven million people (or more than 40% of the population of the Netherlands)—but at the time it filed its complaint, SDBN did not provide any substantiation for the support of its alleged constituency. *See* Egeler Decl. ¶ 23.

### C.    Admissibility Criteria Under the GDPR and Dutch Law

To pursue a collective action, an organization like SDBN must demonstrate that it meets admissibility requirements under both the GDPR as well as the WAMCA regime, which Dutch courts have referred to as the "double admissibility test." Egeler Decl. ¶ 10. Article 80(1) of the GDPR stipulates that the filing party must meet three criteria to bring a collective action under the GDPR. The filing party must be: (1) "not-for profit body," which has (2) "statutory objectives which are in the public interest," and (3) "is active in the field of data protection," See Egeler Decl. ¶ 11. SDBN claims that it meets the requirements for a collective action under the GDPR as it is a not-for-profit that serves the interests of persons who have suffered violations of privacy law, and it is not claiming compensation for itself in the proceedings. It also claims that its directors have "no direct or indirect profit motive realized through the legal entity." *See* Egeler Decl. ¶14.

Additionally, SDBN alleges that the action is admissible under the WAMCA. Egeler Decl. ¶ 8. To file a claim under the WAMCA, the action must be initiated by a foundation with full legal capacity that is protecting the interests of its class members, which must be similar. Egeler Ex. 2, English translation of the WAMCA. The class members' interests must be

sufficiently safeguarded, which means that the organization must be sufficiently representative and fulfill other requirements regarding governance and transparency. Egeler Decl. ¶ 16. To be sufficiently representative, the organization must show which parties it represents by describing the group with precision and proving that the action is supported by a sufficiently large part of the group of affected persons. Egeler Decl. ¶ 17.

Notably, another relevant consideration for sufficient representation is whether the Dutch Proceeding was commenced in response to individuals' concerns, and not the other way around—i.e., that a sufficient number of claimants (i.e., aggrieved individuals) had come forward and/or were known by SDBN to have the identified concerns before the Dutch Proceeding seeking redress for those concerns was initiated. Egeler Decl. ¶ 16. Furthermore, the claim organization must show that it has "sufficient control" over the action and that a litigation funder is not influencing strategy. Egeler Decl. ¶ 19.

### D.    The Requested Discovery Will Demonstrate that SDBN Does Not Meet the Admissibility Criteria of the GDPR or the WAMCA

Adobe's Statement of Defense, which covers the threshold issues of jurisdiction and admissibility, will be submitted by September 25, 2024. *See* Egeler Decl. ¶ 8. The requested discovery is critical for Adobe to defend itself in the Dutch Proceeding and challenge the admissibility of SDBN's claim, as there are significant doubts about whether SDBN meets the stringent criteria for collective actions that is required by the GDPR and the WAMCA.

### 1.    Adobe Believes a Profit Motive May be Driving the Litigation.

Under both the GDPR and the WAMCA, a claim organization may not have a profit motive in bringing the action. *See* Egeler Decl. ¶¶ 14-15. Although the WAMCA allows for litigation funders, the GDPR's admissibility requirements are structured to avoid creating a claim culture in Europe where a claim organization's interests are more important than the data

5

subjects' interests that the claim organization purports to represent. *See* Egeler Decl. ¶ 12. The GDPR requirements are meant to prevent the creation of a system where organizations are actively seeking issues to litigate for profit. *Id*.

While SDBN claims to meet this requirement, SDBN was only founded recently, its board and advisors have no long-standing privacy reputation, and its first action was privacy litigation against other technology companies. *See* Egeler Decl. ¶ 24. At essentially the same time, SDBN brought on a litigation funder, Marsh, to fund this and another litigation—suggesting that Marsh, and its desire to create returns for its investors, is the driving force behind the Dutch Proceeding, and not SDBN's purported "non-profit" motives. *See* Egeler Decl. ¶ 27.

SDBN's relationship with Marsh calls the collective action's purported lack of profit motive into question such that the action may not be admissible under the GDPR. In its Writ of Summons, SDBN provided limited information regarding Marsh's financial interest, indicating that if it receives an award higher than 50 million EUR, it will pay Marsh either 20% of the total award or 5 times the investment of the funder, whichever is higher. If the award is lower than 50 million EUR, Marsh will receive a full refund of its investment and 15% of the total award. *See* Egeler Decl. ¶ 25. SDBN does not disclose whether this funding agreement is tied to any other funding arrangements, under what circumstances Marsh has the ability to walk away from the funding arrangement, what costs can be incurred with or without Marsh's approval, or various other tactical or strategic issues that may be tied to or driven by the funding agreement.

SDBN's independency from Marsh can also be questioned by the fact that SDBN's Articles of Association, since its January 23, 2023 amendment, allow for SDBN to provide collateral to Marsh. It is unclear what kind of collateral SDBN can possibly give without

6

contradicting its claim that its decision-making is not being "clouded" by concurrent financial interests. *See* Egeler Decl. ¶ 27.

Adobe is therefore requesting discovery that further explains the funding arrangement and sheds light on the relationship between Marsh and SDBN, as well as between Marsh and its investors (whose interests are in receiving significant returns on their investments). The funding agreement itself, negotiations leading to the agreement, and communications and disclosures between Marsh and its investors will shed light on Marsh's and its investors' profit motives and incentives. A significant number of these documents can only be obtained from Marsh, and they are critical to demonstrating whether the litigation aims to realize profit instead of to represent the interests of the class. If so, this would constitute grounds for dismissal of the Dutch Proceeding, as SDBN would not have a valid collective action under the GDPR and the WAMCA.

> ## 2.   **The Claim Must be Dismissed if The Class's Interests Are Not Being Sufficiently Safeguarded.**

For the Dutch Proceeding to be admissible as a collective action under the WAMCA, SDBN also must show that its class's interests are "sufficiently safeguarded." Egeler Decl. ¶ 16. A criteria in determining whether the class's interests are safeguarded is by examining whether the claim organization is "sufficiently representative." *Id.* This means that SDBN has the support of an actual class and that the claim represents the alleged class. *Id.* Moreover, the claim must have been *initiated* as a result of actual concerns raised by affected individuals—rather than by SDBN's or its funder's interests.

When the proceeding commenced, SDBN failed to show support from the class it was representing—which raises serious questions about whether it was supported by an adequate number of individuals, and whether it was prompted by consumer concerns or the interests of

Marsh and/or SDBN. [4] It is also unclear how many individuals are currently part of the class, how they were identified, when and by whom. A very low number of plaintiffs would show that SDBN does not have standing to bring the suit as the organization would not be sufficiently representative.

Adobe is therefore requesting documents regarding what prompted the initiation of the action, Marsh's and SDBN's relationships with the individuals comprising the putative class, how many allegedly affected individuals existed when the case was initiated, how many are currently represented, and how, when and by whom they were identified. Marsh's role and motives in this—and thus documents and communications that in many instances are exclusively in Marsh's possession—will be highly probative of issues that will determine whether or not the case must be dismissed.

3.      **SDBN May Lack Necessary Control over the Dutch Proceeding.**

The WAMCA requires a claim organization relying on third-party funding to demonstrate that it has "sufficient control" over the action. Egeler Decl. ¶ 19. This is to ensure that the class's interests are sufficiently safeguarded by the claim organization. *Id.* Marsh's involvement in the collective action raises questions about whether SDBN has sufficient control over the action, or whether and to what extent Marsh is in fact driving strategy and tactical decisions. Moreover, this is not the only collective action being pursued by SDBN in Europe— nor is it the only one that Marsh is funding for SDBN. Rather, Marsh is also funding SDBN's

---

[4] By contrast, in a putative collective action filed in the Netherlands against Oracle Corporation, the claimant stated that they received 75,000 "likes" on their website, arguing that it showed support by the class for the claim. The claimant also stated that 1,800 individuals left their email addresses, expressing support for the claim. *See Appeal Submission*, https://www.rechtspraak.nl/SiteCollectionDocuments/GHAMS-dagvaarding-collectieve-vordering-Oracle-Salesforce.pdf (last visited July 8, 2024).

8

collective action against Amazon in the Netherlands, which alleges similar privacy claims and was commenced a few months before the Dutch Proceeding. *See* Egeler Decl. ¶ 27. Given the overlap in claimant, claims, and funding between the two actions, strategy decisions and funding arrangements in the Amazon action may very well influence the strategy or outcome of the Dutch Proceeding, jeopardizing the interests of SDBN's alleged class. This would likewise demonstrate that the Dutch Proceeding is not fully under SDBN's control.

Adobe therefore requests documents that will demonstrate Marsh's role in these parallel litigations, the extent to which it is viewing the multiple litigations as part of a single strategy and financial investment, and whether SDBN has implemented safeguards between the two suits, and amongst itself and Marsh in terms of control over the litigation. The discovery requested from Marsh will therefore allow Adobe to support its Statement of Defense, and its challenge as to whether the Dutch Proceeding can be pursued under the WAMCA and the GDPR.

## III.   REQUESTED DISCOVERY

Through this Application, and as more fully detailed in Exhibit 1 to the Williams Declaration (the "Subpoena"), Adobe seeks three categories of documents relating to Marsh's relationship with SDBN and the Dutch Proceeding, all of which are relevant to the Dutch Proceeding and which are likely in the possession, custody, and control of Marsh. The requests include Documents and Communications (as defined in the Subpoena) that:

- reflect the financial motives and arrangements behind the Dutch Proceeding;

- demonstrate whether SDBN is sufficiently representative, showing what and/or who prompted the filing of the Dutch Proceeding and the number of individuals actually represented; and

- show whether SDBN has sufficient control over the litigation and to what extent Marsh is influencing decisions.

9

As explained herein, each of these categories of documents is urgently needed for Adobe to support its forthcoming defense on September 25, 2024.

## IV.    ARGUMENT

As demonstrated below, Adobe has satisfied all of Section 1782's statutory requirements, and the Supreme Court's *Intel* discretionary factors strongly favor granting the limited discovery requested here.

To obtain discovery under Section 1782, a party to a foreign proceeding need only demonstrate: (i) that the request is made by an interested person, (ii) that the evidence sought is for use in a proceeding in a foreign or international tribunal, and (iii) that the person from whom discovery is sought is resident in the district of the court receiving the application. *Id.* at 246; *In re Bayer AG*, 146 F.3d 188, 193 (3d Cir. 1998), *as amended* (July 23, 1998).

Once Adobe establishes that the statutory requirements for Section 1782 relief are satisfied, this Court has discretion to grant the Application based on certain equitable considerations, including:  (i) whether the discovery sought is within the jurisdiction of the foreign proceeding, (ii) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance," (iii) whether the Section 1782 request "conceals an attempt to circumvent foreign proof gathering restrictions," and (iv) whether the request is otherwise "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264–65.

In exercising their discretion under Section 1782, district courts must act in light of the twin aims of the statute: "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Id.* at 252; *In re Biomet Orthopaedics Switzerland GmBh*, 742

F. App'x 690, 696 (3d Cir. 2018). Thus, Section 1782 has been broadly interpreted to permit U.S. courts to grant "wide assistance" to foreign litigants. *See, e.g.*, *John Deere Ltd. v. Sperry Corp.*, 754 F.2d 132, 135 (3d Cir. 1985) ("Section 1782's liberal intent to provide judicial assistance" has been "acknowledged" as Section 1782's "primary statutory goal"); *In re Malev Hungarian Airlines*, 964 F.2d 97, 100 (2d Cir. 1992) ("imposing an additional burden" on Section 1782 applicants would "undermine the policy of improving procedures for assistance to foreign and international tribunals").

As explained below, the Court should exercise its discretion and grant Adobe's Application. This exercise of discretion is particularly warranted here, as Dutch courts are receptive to discovery obtained in Section 1782 proceedings, and the requested discovery (three categories of documents) is narrow and relevant to Adobe's defenses in the Dutch proceeding.

### A.  Adobe's Application Meets the Section 1782 Requirements

Adobe's Application indisputably satisfies the three statutory requirements: Adobe is an "interested person" in a foreign proceeding in the Netherlands, and through this Application it seeks discovery from subjects residing within this District for use in the Dutch Proceeding. *Intel*, 542 U.S. at 246–49.

### 1.  Adobe Is an "Interested Person."

First, as Adobe is a named party in the Dutch Proceeding, there is therefore "no doubt" that it qualifies as an "interested person" within the meaning of Section 1782. *Id.* at 256. Egeler Decl. ¶ 5.

### 2.  The Evidence Is For Use in a Foreign Proceeding.

Second, Adobe easily meets the requirement that the evidence it seeks through a Section 1782 application is for use in a foreign proceeding. The Dutch Proceeding—a collective action in the Rotterdam District Court—satisfies the test for a foreign proceeding. *See, e.g.*, *Intel*, 542 U.S.

11

at 258 ("[t]he term 'tribunal' includes . . . conventional civil, commercial, criminal, and administrative courts" (citations omitted)); *In re Application of OOO Promneftstroy for an Ord. to Conduct Discovery for use in a Foreign Proceeding*, 134 F. Supp. 3d 789, 791 (S.D.N.Y. 2015) (granting Section 1782 application for use in a proceeding in the Netherlands).

Nor is there any doubt that the evidence sought by this Application is for "use in" a foreign proceeding. To satisfy the "for use" prong, the evidence need only be relevant to the foreign proceeding. *See Weber v. Finker*, 554 F.3d 1379, 1384–85 (11th Cir. 2009) (Section 1782 discovery requests need only comply with the Fed. R. Civ. P. 45 standard for relevance). The evidence need not actually, or even probably, be discoverable or admissible in the foreign proceeding. *See Advanced Micro Devices, Inc. v. Intel Corp.*, 292 F.3d 664, 669 (9th Cir. 2002); *see also In re Bayer AG*, 146 F.3d at 193 (holding that "imposing a requirement that the materials sought be discoverable in the foreign jurisdiction would be inconsistent with both the letter and spirit of the statute").

Here, the requested discovery is relevant to Adobe's defenses in the Dutch Proceeding, as explained earlier in this Application, and should therefore be discoverable. *See id.* at 195. (noting that "district courts should treat relevant discovery materials sought pursuant to § 1782 as discoverable unless the party opposing the application can demonstrate facts sufficient to justify the denial of the application").

### 3.     Marsh is Located in Delaware.

Third, Marsh "resides or [is] found" in this District because it is incorporated in Delaware and its headquarters are in Dover, Delaware. *See In the Matter of HES (Caribbean) Int'l Holdings, S.R.L.*, 2020 WL 728892, at *2 (D.N.J. Feb. 13, 2020) (finding that the state in which a company is incorporated in is where it is "found"). *See* Williams Ex. 2, Delaware Company Search.

**B.      The *Intel* Discretionary Factors Strongly Favor Granting Discovery**

All four discretionary factors outlined by the Supreme Court in *Intel*, 542 U.S. at 264–65, also strongly favor granting the requested discovery.

### 1.      <u>The Evidence is Located in the United States, and Marsh is not a Named Party in the Foreign Proceeding.</u>

Where, as here, discovery sought through Section 1782 is not available in the foreign proceeding, the first *Intel* factor supports granting discovery. Marsh is not a participant in the Dutch Proceeding, a fact that courts have deemed important when analyzing the first *Intel* factor. *See Intel*, 542 U.S. at 264; *In re Martin & Harris Priv. Ltd.*, 2021 WL 2434069 (D.N.J. June 14, 2021) (stating that Section 1782 discovery is "disfavored" if the target is a party to the foreign proceeding). Dutch discovery laws are more limited than U.S. discovery laws, and even more limited regarding discovery from third parties. *See* Egeler Decl. ¶ 29. It would therefore be highly challenging and uncertain for Adobe to request discovery from Marsh in the Netherlands. *Id*. As Marsh is not a party to the Dutch Proceeding, it would be difficult, if not impossible, for Adobe to obtain the relevant documents in the Dutch Court. *Id*.

Nor can Adobe obtain the requested discovery from SDBN in the Dutch Proceeding. As an initial matter, some of the requested discovery is not in the possession or control of SDBN and can only be obtained from Marsh. With regard to the requested discovery that may also be in the possession or control or SDBN, on June 19, 2024, Adobe sent SDBN a summons in the Netherlands in which it asked the organization to voluntarily provide several of the Documents and Communications asked for in the subpoena. SDBN rejected this request on June 25, 2024. *See* Egeler Ex. 3, Correspondence with SDBN. As Dutch courts are not involved in these requests, it would be extremely challenging to compel SDBN to provide this discovery. The mechanism under Dutch law to request this type of discovery is complex and time consuming, and regardless, many

13

of the requested documents are solely in Marsh's possession. *See* Egeler Decl. ¶ 30. Therefore, the most effective and efficient way to receive this discovery is through a Section 1782 application.

Further, as Marsh is a U.S.-based company, the documents targeted by this Application are likely located in the United States, making it more efficient to obtain that evidence through the compulsion power of a U.S. court. *See, e.g., In re Procter & Gamble Co*., 334 F. Supp. 2d 1112, 1115 (E.D. Wis. 2004) (granting Section 1782 application to subpoena a party to a foreign proceeding because the evidence was located in the United States and could be more efficiently obtained through a U.S. court); *see also Nikon Corp. v. GlobalFoundries U.S., Inc.*, 706 F. App'x 350, 351 (9th Cir. 2017) (affirming grant of a Section 1782 application targeting "documents located both in the United States and abroad"). As some of the documents are solely in the possession of Marsh, a Section 1782 application is the most efficient means to obtain this discovery.

The first discretionary factor therefore supports the grant of discovery here.

### 2.    <u>The Dutch Court Is Not Hostile to This Application.</u>

In evaluating the second factor, courts should find in favor of discovery absent a "clear directive"—meaning "authoritative proof"—from the foreign country's judicial, executive, or legislative declarations that specifically rejects the use of evidence gathered under foreign proceedings. *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995). Here, not only is there no clear evidence of rejection, but to the contrary, there is every reason to believe that the Dutch Court would appreciate and benefit from this Court's assistance. *See* Egeler Decl. ¶¶ 34-35. The Dutch Supreme Court has previously held that documents obtained using Section 1782 discovery may be used in proceedings before Dutch courts. *See* Egeler Decl. ¶ 34. There is no law, rule of evidence, or rule of procedure in the Dutch Proceeding that prohibits Adobe from filing this Application or from seeking and obtaining the discovery requested here and using it in the

Dutch Proceeding. *See Id*. Indeed, courts in the United States have previously granted discovery pursuant to Section 1782 for use in Dutch litigations. *See In re Jud. Assistance Pursuant to U.S.C. Sec. 1782 ex rel. Macquarie Bank Ltd*., 2014 WL 7706908, at *3 (D. Nev. June 4, 2014) (noting that "Dutch courts have expressly ruled that parties there may rely on § 1782 petitions in this country as a lawful means of obtaining discovery").[5]

### 3.    The Application Has Not Been Filed to Circumvent Any Law or Rule

The Application is brought in good faith and does not seek to circumvent Dutch restrictions with respect to gathering evidence or other policies. To the contrary, Dutch law in no way prohibits the parties from seeking the assistance of U.S. courts in obtaining evidence. *See* Egeler Decl. ¶ 34. Dutch rules of civil procedure are broad in terms of allowing parties to submit evidence obtained by means other than the limited means provided by the Dutch rules. *See Id*. ¶ 35. Parties have the ability to gather and submit evidence that support their position, and evidence in any form may be submitted, unless provided otherwise by law. *Id*. Therefore, the third *Intel* factor favors granting the Application. *See, e.g., In re Application of 000 Promneftstroy for an Ord. to Conduct Discovery for use in a Foreign Proceeding*, 134 F. Supp. 3d 789, 792 (S.D.N.Y. 2015) (Dutch law expert objecting to Section 1782 discovery agreed that Dutch courts "do not preclude submission of any material" and conceded that the Dutch court would accept evidence produced pursuant to § 1782).

---

[5] Although respondent may cite *Kiobel* to argue that Dutch courts are not receptive to Section 1782 discovery, that case is easily distinguished from this one. *Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 248 (2d Cir. 2018). There, the issue was that the applicant had previously received the documents under a protective order that banned her from using them in another litigation. The Second Circuit found that the Section 1782 application had been filed to circumvent the protective order, not because the Dutch court was unreceptive to Section 1782 discovery. *Id.* at 246.

###### 4.      The Discovery Requests Are Not Unduly Intrusive or Burdensome.

Finally, the requested discovery is focused and highly relevant. Adobe seeks only three categories of documents relating to the narrow issue of Marsh's relationship with SDBN and the Dutch Proceeding. The discovery will materially assist the Dutch Court in determining whether SDBN's action is admissible as a collective action, and it will allow Adobe to dispute threshold admissibility of the action in its forthcoming Statement of Defense. *See* Egeler Decl. ¶ 8. Given that the discovery requested is focused, highly relevant, and necessary for the Dutch Proceeding, the fourth *Intel* factor also supports the grant of Adobe's Application.

## V.      CONCLUSION

For the foregoing reasons, Adobe respectfully requests that the Court grant its Application and issue an Order pursuant to 28 U.S.C. § 1782: (i) authorizing Adobe to serve Marsh with the subpoenas attached as Exhibit 1 to the Williams Declaration, (ii) directing Marsh to produce the documents responsive to the subpoena within 14 days of service of the subpoena, and (iii) granting such other and further relief as this Court deems just and proper.

*/s/ Kelly E. Farnan*

*Of Counsel:*

Gayle R. Klein
Linda H. Martin
Noelle Williams
Maylin Meisenheimer
3 World Trade Center
175 Greenwich Street
New York, NY 10007
(212) 277-4000
gayle.klein@freshfields.com
linda.martin@freshfields.com
noelle.williams@freshfields.com
maylin.meisenheimer@freshfields.com

Kelly E. Farnan (#4395)
Sara M. Metzler (#6509)
Jessica E. Blau ((#7163)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19801
(302) 651-7700
farnan@rlf.com
metzler@rlf.com
blau@rlf.com

*Attorneys for Applicants Adobe, Inc. and
Adobe Systems Software Ireland Limited*

Dated: July 23, 2024

17